UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHELE BURTON,** *Individually and as assignee of Joyce Frisbie,* **and ROBERT BURTON,** *Individually and as assignee of Joyce Frisbie,* | : : : | |
| Plaintiffs | : | CIVIL ACTION NO. 3:21-1522 |
| v. | : | (JUDGE MANNION) |
| **PROGRESSIVE ADVANCED INSURANCE COMPANY,** | : : | |
| Defendant | : : | |

### MEMORANDUM

Pending before the court are the parties' cross motions for summary judgment. (Doc. 10, Doc. 11). Based upon the court's review of the record, the defendant's motion for summary judgment will be **GRANTED** and the plaintiffs' motion for summary judgment will be **DENIED**.

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*,

901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is

some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

The summary judgment standard does not change when the parties have filed cross motions for summary judgment. *Applemans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987). When confronted with cross motions for summary judgment, as in this case, "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard." *Marciniak v. Prudential Financial Ins. Co. of America*, 2006 WL 1697010, at *3 (3d Cir. June 21, 2006) (citations omitted) (not precedential). If review of cross motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of

judgment in light of the law and undisputed facts. *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted). *See Nationwide Mut. Ins. Co. v. Roth*, 2006 WL 3069721, at *3 (M.D. Pa. Oct. 26, 2006) *aff'd*, 252 F. App'x 505 (3d Cir. 2007).

The undisputed facts of record in this case demonstrate that, on January 15, 2018, Joyce Frisbie was involved in a motor vehicle accident for which she was responsible, and which resulted in the plaintiff, Michele Burton, sustaining personal injuries. At the time of the accident, Ms. Frisbie was insured by an automobile insurance policy issued by the defendant, Progressive Advanced Insurance Company ("Progressive"). This policy provided $250,000 per person/$500,000 per accident in liability coverage, subject to the terms and conditions of the policy. The policy provides, in relevant part:

> **PART I – LIABILITY TO OTHERS**
>
> * * *
>
> **EXCLUSIONS – READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART I.**
>
> Coverage under this Part I, including **our** duty to defend, will not apply to any **insured person** for:
>
> * * *

> 11. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle owned by **you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased.

The policy further provides, in relevant part:

**<u>GENERAL DEFINITIONS</u>**

The following definitions apply throughout the policy. Defined terms are printed in bold-face type and have the same meaning whether in the singular, plural, or any other form.

> \* \* \*
>
> 5. "**Covered auto**" means:
>    a. any **auto** or **trailer** shown on the **declarations page** for the coverages applicable to that **auto** or **trailer**;
>    b. any **additional auto**;
>    c. any **replacement auto**; or
>    d. a **trailer** owned by you.

The only auto listed on Ms. Frisbie's declarations page was her 2006 Honda Civic. However, on the date of the accident, Ms. Frisbie was driving a 2006 Chevrolet Tahoe owed by her brother, Jason Frisbie. The Chevy Tahoe was insured by a policy of insurance issued by Erie Insurance which provided bodily injury liability coverage in the amount of $100,000 per person/$300,000 per accident. On April 5, 2019, the accident was reported to Progressive by Erie Insurance.

On April 12, 2019, Progressive's representative, Jamie Jones, took Ms. Frisbie's recorded statement. At that time, Ms. Frisbie stated that she

had her brother's permission to drive the Tahoe because she was having mechanical problems with her Civic. Ms. Frisbie indicated that the Tahoe "was, like, his extra vehicle. He had another one that he was using, and he allowed me to use his Tahoe." She further stated that "I had had it, well, I had his car for a month or two before that. I wanna say I had his Tahoe for, like, probably a month or two before even the accident. 'Cuz just when winter hit, we figured it was easier that I just borrow his and then work on my car once the weather broke." Subsequently, on April 25, 2019, Ms. Jones had a telephone conversation with Mr. Frisbie relating to Ms. Frisbie's use of the Tahoe.

On May 9, 2019, Ms. Jones sent a letter to Ms. Frisbie and stated, in relevant part, "the vehicle you were operating at the time of loss was not listed on your declarations page at the time of the accident. Our investigation determined this vehicle was furnished and available for your regular use and therefore meets a policy exclusion." It was also stated, "if you have any additional questions or information for me to consider, please do not hesitate to contact me."

On May 10, 2019, Ms. Jones sent letters to the plaintiffs and stated that she was "unable to find valid coverage for this incident and we won't be able to pay your claim." Also on this date, Ms. Jones sent a letter to Mr.

- 6 -

Frisbie stating, "I was unable to find valid coverage for this incident and we won't be able to pay your claim. If you have your own insurance carrier, you may want to check with them to see if you have coverage under that policy.

On May 13, 2019, Progressive's representative, Stephanie Scanish, sent an email to plaintiffs' counsel's office, stating "Progressive has completed our excess investigation for your client Michele Burton and has determined there is no valid excess coverage under this Progressive policy."

On June 21, 2019, Progressive's representative, Jane Kennedy, sent a letter to plaintiffs' counsel stating, "please be advised that we must deny all coverage for Joyce Frisbie."

The plaintiffs filed a lawsuit against Ms. Frisbie in the Court of Common Pleas of Lackawanna County for her negligence in causing the accident, and a claim for underinsured motorist ("UIM") benefits under the plaintiffs' own automobile insurance policy issued through State Farm Mutual Automobile Insurance Company ("State Farm"). In the lawsuit filed by plaintiffs against Ms. Frisbie, Ms. Frisbie was defended by an attorney hired by Erie Insurance, her brother's insurer. Progressive did not participate in the third party lawsuit on behalf of Ms. Frisbie.

Ms. Frisbie was deposed on September 24, 2019, as part of the third party litigation. During her deposition, Ms. Frisbie testified that her car had

mechanical issues and her brother allowed her to drive his vehicle. She further testified that her use of the Tahoe was temporary until her vehicle was repaired. Ms. Frisbie provided that she had her brother's Tahoe for "roughly about a month probably before the accident, and then I had it for a couple of months after." During the time Ms. Frisbie was using her brother's vehicle, she testified that she had possession of it "7 days a week 24 hours a day" and parked it at her home.

Mr. Frisbie was deposed in the prior lawsuit filed against Ms. Frisbie on December 11, 2019. He testified that he gave Ms. Frisbie permission to drive his Tahoe because her Civic was inoperable. He provided that it was "probably pretty correct" that Ms. Frisbie had been using the Tahoe "for about a month" prior to the accident and that she continued to use the Tahoe after the accident, and that she drove it "just for the few months."

In relation to the third party action, the plaintiffs also took the deposition of Dale Faux, the Progressive claims adjuster handling Mrs. Burton's claim. Mr. Faux testified that the claims notes contained what he described as a guideline to be used by employees of Progressive when considering the

regular use exclusion.[1] Mr. Faux testified that Progressive interprets regular use to mean "consistent, habitual, with no sign of stopping and with recurring access." He further testified that "not regular use" includes use that is "isolated, casual, incidental, limited, conditional and infrequent." Mr. Faux provided that Ms. Frisbie's use of her brother's car was found to be regular use because there was no timeline for when her vehicle was to be repaired, and there was no sign of stopping the use or end date.

The deposition of Jaime Jones was conducted on February 28, 2022. Ms. Jones made recommendations that led to the coverage denial issued to Ms. Frisbie under the Progressive policy, which were based, in part, on the fact that it was unknown when Ms. Frisbie's use of the Tahoe was going to end. She agreed that the policy does not define regular use.

On March 17, 2021, a bench trial was conducted in the lawsuit filed by the plaintiffs against Ms. Frisbie. A verdict was entered in favor of the plaintiffs and against Ms. Frisbie in the amount of $320,871.30. As Progressive denied liability coverage to Ms. Frisbie for the accident, Progressive did not defend Ms. Frisbie or pay any amount towards the

---

[1] Although defendant denies the plaintiffs' characterization of Mr. Faux's testimony, the plaintiff's characterization is accurately reflected.

verdict. Erie Insurance tendered its bodily injury liability policy limits of $100,000 to the plaintiffs in partial satisfaction of the verdict.

Following the verdict, Ms. Frisbie assigned her rights to pursue any claims against Progressive to the plaintiffs, and the plaintiffs subsequently initiated the instant action against Progressive by filing a complaint on August 4, 2021. Ms. Frisbie was again deposed in relation to this matter on March 29, 2022. At this time, Ms. Frisbie testified that her Civic was inoperable "at least a few months" before the January 2018 accident and, during that time, she was using her brother's Tahoe. Ms. Frisbie also testified that she continued to use the Tahoe for "at least a few months" after the accident. As far as use of the vehicle, Ms. Frisbie testified she used it for "[d]octor's appointments and grocery store. Just if we had to go out and when I went to church. Like, just normal." In addition, Ms. Frisbie testified that she used the Tahoe to take her fiancé to and from work, and that her brother did not place any restrictions on her use of the Tahoe. During this time, Ms. Frisbie testified that she used the Tahoe regularly and that she was the principal driver of the vehicle.

Mr. Frisbie was also deposed in relation to the instant action on March 29, 2022. At that time, Mr. Frisbie testified that he gave Ms. Frisbie the Tahoe for her temporary use while her car was being repaired. He further testified

that she had the Tahoe for a "couple of weeks maybe, a month. I know it was a while. I wasn't in a big hurry to get it back because I had other cars . . . It could have been a few months." Mr. Frisbie testified that Ms. Frisbie used the Tahoe for "work, daily use. Whatever she needed."

With the above undisputed facts in mind, before the court are the parties' cross motions for summary judgment. In their motion, citing to *Rush v. Erie Ins. Exchange*, 265 A.3d 794 (Pa.Super. 2021)[2], and this court's decision in *Evanina v. First Liberty Ins. Corp.*, 2022 WL 584499 (M.D.Pa. 2022), the plaintiffs argue that the regular use exclusion is unenforceable as it limits the scope of liability coverage that the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL") requires. As the defendant argues, however, both *Rush* and *Evanina* were underinsured ("UIM") claims cases, wherein the regular use exclusion was found to be unenforceable as being contrary to §1731 of the MVFRL which governs the scope of UIM claims. This case does not involve a UIM claim and, by extension, §1731 does not apply. Instead, this case involves a claim for liability coverage. Without any supporting authority, the plaintiffs ask this court to extend the holdings of

---

[2] The Pennsylvania Supreme Court has granted the insurer's petition for allowance of appeal in *Rush*. *See* 37 MAL 2022 (June 27, 2022).

*Rush* and *Evanina* to their liability claim. The plaintiffs have provided, and the court has found, no support under Pennsylvania law to do so. The plaintiff's motion for summary judgment will be denied on this basis.

The plaintiffs next argue that, even if enforceable, the regular use exclusion is inapplicable in this case because the use of Mr. Frisbie's Tahoe by Ms. Frisbie was temporary and therefore did not constitute regular use. The parties agree that the term "regular use" is unambiguous, and that it has been defined by the courts as "a principal use as distinguished from a casual or incidental use." *Nationwide Mut. Ins. Co. v. Shoemaker*, 965 F.Supp. 700 (E.D.Pa. 1977) (citations omitted).

The plaintiffs argue that Ms. Frisbie's Civic was disabled due to mechanical issues. As a result, Mr. Frisbie loaned her his Tahoe. Both Ms. Frisbie and Mr. Frisbie testified that the use of the Tahoe was temporary, only to last until Ms. Frisbie's Civic was repaired. The plaintiffs argue that the defendant denied coverage based upon the mistaken beliefs of Mr. Faux and Ms. Jones that the Civic was either not going to be repaired or it was unknown when the Civic would be repaired, respectively. Both Ms. Frisbie and Mr. Frisbie testified that her use of the Tahoe, in fact, stopped a couple of months after the accident when her Civic was repaired. Because the use of the Tahoe had a planned stopping date, i.e., upon repair of the Civic, the

plaintiffs argue that the type of use was not "regular", but incidental or temporary.

For its part, the defendant argues that, although the use of the Tahoe may have been "temporary", this does not itself bar exclusion from coverage. *See Nationwide Mut. Ins. Co. v. Shoemaker*, 965 F.Supp. 700 (E.D.Pa. 1997). In *Shoemaker*, the court found that a granddaughter's use of her grandmother's car on a daily basis over a period of three weeks constituted regular use. *Id*. at 708. There, the court reviewed a number of decisions concerning regular use exclusions and recognized two factors as "significant clues" to the presence of regular use, those being blanket permission to use the vehicle and an available set of keys. *Id.* at 706. While these factors may not be "universally important indicia" for regular use in every case, they are for situations concerning family members. *See Prudential Prop. & Cas. Ins. Co. v. Hinson*, 277 F. Supp. 2d 468, 474 (E.D. Pa. 2003).

Here, the record reflects that during the months that Ms. Frisbie used her brother's Tahoe, she was the principal operator of the car. She kept the vehicle at her residence full-time. She drove it whenever she needed to go somewhere. She used it to go grocery shopping, to medical appointments, to church, to take her then fiancé back and forth to work. She had no restrictions whatsoever on the use of the vehicle. And, while it is true that the

term of usage may have been temporary in the sense that Ms. Frisbie would only use the Tahoe until her Civic was repaired, there was no actual repair date set for the Civic. Given the facts of record, the court finds that the Tahoe was available for Ms. Frisbie's regular use at the time of the accident and therefore the plaintiffs cannot recover against the defendant. On this basis, the defendant is entitled to summary judgment.[3]

In light of the foregoing, an appropriate order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: March 20, 2023**
21-1522-01

---

[3] In its motion for summary judgment, the defendant argues that it is entitled to summary judgment on the plaintiffs' bad faith claim because where there is no coverage, there can be no bad faith. The plaintiffs do not challenge this argument and the court finds it to be well-taken. Therefore, the defendant is entitled to summary judgment as to the plaintiffs' bad faith claim as well.